WRIGHT, FINLAY & ZAK, LLP
Robin P. Wright, Esq.
Nevada Bar No. 9296
Stephanie A. Garabedian, Esq.
Nevada Bar No. 9612
8337 W. Sunset Rd, Suite 220
Las Vegas, NV 89113
(949) 477-5050; Fax: (702) 946-1345
sgarabedian@wrightlegal.net
*Attorneys for Plaintiff, TOP Media, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| TOP MEDIA, LLC, a Nevada Limited Liability Company,<br><br>            Plaintiff,<br>     vs.<br><br>LOGE CAMPS LLC, a Washington Limited Liability Company; and Defendant DOES 1-100 and ROES 1-100,<br><br>            Defendants. | Case No.:<br><br>**COMPLAINT** |

1.  Plaintiff Top Media, LLC ("Top Media") is and at all relevant times was, a domestic limited liability company duly organized under the laws of the state of Nevada, with its respective principal place of business located in Clark County, Nevada.

2.  Upon information and belief, Defendant Loge Camps, LLC ("Loge") is a domestic limited liability company duly organized under the laws of the state of Washington, with its respective principal place of business located in Washington.

3.  The true names, identities, and capacities, whether individual, corporate, associate, or otherwise, of Defendants Does I through X, inclusive, and Roe Corporations I through X, inclusive ("Doe and Roe Defendants"), are presently unknown to Plaintiff, who therefore sues such Doe and Roe Defendants by fictitious names. Plaintiff is informed and believes, and upon such information and belief, alleges that the Doe and Roe Defendants are legally responsible in

1  some manner for the unlawful acts and/or omissions hereinafter described. Plaintiff will seek leave
2  of Court to amend this complaint to reflect the true names and capacities of each of the Doe and
3  Roe Defendants as and when such information is ascertained.

4      4.    The United States District Court for the District of Nevada has original subject
5  matter jurisdiction with respect to this action pursuant to 28 U.S.C. § 1332, as there exists complete
6  diversity of citizenship between Plaintiff and Defendant, and the amount in controversy exceeds
7  $75,000.00, exclusive of interest and costs.

8      5.    The acts and events at issue in this complaint involve and relate to conduct that
9  occurred in Clark County, Nevada.   Additionally, Plaintiff not only regularly conducts business
10 in Clark County, Nevada, but the parties agreed, in writing, to jurisdiction and venue in Clark
11 County, Nevada.  Therefore, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

**GENERAL ALLEGATIONS**

13     6.    Top Media is a marketing company that provides online public relations services
14 for businesses across the nation.

15     7.    Upon information and belief, Loge provides outdoor-adventure-focused
16 experiences and lodging at various locations throughout the United States of America.

17     8.    On October 28, 2022, Loge executed an Agency Services Agreement
18 ("Agreement") with Top Media to receive marketing (in print, media and online), rapid response
19 PR opportunities and product specific launches for featured properties.

20     9.    Pursuant to Exhibit A-1 (the "Statement of Work") of the Agreement, Loge agreed
21 to pay Top Media to perform the following services:

> **A. Always-On PR**
> TOP shall conduct a U.S. PR program that seeks to gain coverage for Client in online, print, and broadcast media outlets. To do this, TOP shall approach media gatekeepers with timely and newsworthy ideas for articles, interviews, and blog posts. TOP shall present Client with recommended stories to be pitched. Pitches shall promote multiple new properties, already-launched properties, and the LOGE brand as a whole — including the founding team, specific acquisitions, and the founding story. A special emphasis shall be placed on stories that position Client for future fundraising activity with investors on favorable terms.

**B. Rapid Response PR**
TOP shall monitor industry mentions of keyword topics in order to identify strategic opportunities for Client to respond and participate in the ongoing media narrative. TOP will then respond to the most promising opportunities to convert them into Client coverage or awareness with journalists. TOP shall provide periodic reporting to Client of these strategic opportunities and the overall media coverage landscape.

**C. Property-Specific Launch PR**
TOP shall conduct a PR program for individual Client properties that are scheduled to launch (hereinafter "Featured Property" or collectively as "Featured Properties"). The following Featured Properties shall be included under this Statement of Work:

- Alta Crystal (Washington): November 2022
- South Fork (Colorado): January 2023
- Taos (New Mexico): April 2023
- Westport (Washington): May 2023
- St. George (Utah): May/June 2023
- Missoula (Montana): June/July 2023
- West Dover (Vermont): October 2023
- Crystal Mountain (Washington): November 2023
- Essex (Montana): November 2023

*See* **Exhibit "1"** at Exhibit 1(A); Agency Services Agreement.

10. Exhibit 1 (A) to the Agreement also contains a paragraph entitled "Payment Terms."

11. The "Payment Terms" paragraph of Exhibit 1 (A) of the Agreement states:

Client shall pay $365,000 USD (three hundred and sixty-five thousand U.S. dollars) to TOP for work during the Initial Contract Period. Payment shall be assigned as $10,500 USD per month for the first 2 (two) months of Always-On PR and Rapid Response PR at a special Introductory Rates, $15,500 USD per month for 10 (ten) months Always-On PR and Rapid Response PR at Discounted Rates, and $21,000 USD per property for Property-Specific Launch PR for a total of 9 (nine) Featured Properties at Discounted Rates. The parties acknowledge that during the Initial Contract Period, Client is receiving special Discounted Rates that have been reduced from TOP's $20,000 USD per month (Always-On PR and Rapid Response PR) and $30,000 per property (Property-Specific Launch PR) Standard Rates.

Payment shall be made as follows:
- Payment 1 (via electronic transfer): $61,000 USD due on October 31, 2022.
- Payment 2 (via electronic transfer): $61,000 USD due on December 1, 2022.

      • Payment 3 (via electronic transfer): $61,000 USD due on January 1, 2023.
      • Payment 4 (via electronic transfer): $61,000 USD due on February 1, 2023.
      • Payment 5 (via electronic transfer): $61,000 USD due on April 1, 2023.
      • Payment 6 (via electronic transfer): $60,000 USD due on June 1, 2023.

*See* Ex. 1 at Ex. 1 (A).

12. The Agreement acknowledges that Loge received a discount from Top Media's usual charges for the same services. *See* Ex. 1 at Ex. 1 (A).

13. Paragraph 6 (e) of the Agreement states the following:

The parties agree that Client is receiving pricing based on the presumption of on time payments. In the event that Client makes 3 (three) consecutive late payments, or is more than 90 (ninety) days late in any specific payment, TOP reserves the right to rescind any special discount pricing or other benefits that may have been offered Client (hereinafter "Discounted Rates") and Client shall be re-billed a revised amount due immediately based on standard rates (hereinafter "Standard Rates") for the Services or Materials provided as defined in any relevant Statement of Work.

*See* Ex.1 at ¶ 6.

14. Paragraph 1 (d) of the Agreement states the following:

Client acknowledges that each Statement of Work is a single contract period for which TOP shall plan, strategize, and assume financial risks at the onset for the entire SOW contract period, including but not limited to investing in tangible and intangible assets for the benefit of the Client. Any billing periods specified in a Statement of Work are only for the convenience of the Client.

*See* Ex. 1 at Ex. 1 (A).

15. Paragraph 3 (b) of the Agreement states the following:

Client may terminate this Agreement and/or any Statement of Work hereunder upon 60 (sixty) days' advance written notice to TOP (hereinafter "Advance Notice Period"). If Client terminates this Agreement pursuant to this Section 3(b), or if TOP terminates this agreement because of Client's material breach pursuant to Section 3(d), all payments due under this Agreement (including all future payments specified in a Statement of Work) shall immediately become due in full.

*See* Ex. 1. at ¶ 3.

16. Paragraph 6 (a) of the Agreement states:

This Agreement, together with each Statement of Work entered into pursuant to this Agreement, sets forth the entire understanding between the parties hereto, and supersedes and replaces all prior or contemporaneous oral or written agreements between the parties concerning the matters contemplated in this Agreement. This Agreement may not be amended, modified or extended in any

way by either party without the written agreement of other party.

See Ex. 1 at ¶ 6.

17. Because of Top Media's initial significant and substantial investments toward a successful completion of its scope of work at the onset of the Agreement, the parties agreed to Paragraph 1 (d) of the Agreement which acknowledged that the "Statement of Work" was a single contract period which required Top Media to plan, strategize, and assume financial risks at the onset for the entire Agreement period.

18. After the Agreement was executed, Top Media made a significant and substantial investment towards its obligations under the Agreement (including developing an editorial calendar for the entire contract period, writing PR pitches, assembling lists of media contacts, doing analysis of coverage in each market, recruiting and hiring additional workers to perform work specifically for this Agreement, and implementing new software and project management systems).

19. Loge failed to make its first timely payment under the Agreement.

20. Between November 21, 2022 through January 30, 2023, Loge repeatedly assured Top Media that it would make its payments under the Agreement.

21. During that time period, Top Media continued to fulfill its obligations under the Agreement because it relied upon Loge's reassurances that it would fulfill its payment obligations under the Agreement.

22. On January 30, 2023, Loge made its initial payment under the Payment Terms albeit three months late.

23. On February 7, 2023, Loge submitted an email to Top Media entitled "Termination of [A]greement." See **Ex. 2**; email from Slate Olson entitled "Termination of agreement."

24. This was the first email submitted by Loge to Top Media terminating the Agreement between the parties.

25. Upon information and belief, Loge was satisfied with the services it was receiving until February 7, 2023 as its employees repeatedly complimented Top Media for its work under the Agreement.

26. In the February 7, 2023 email from Loge's EVP of Marketing (Slate Olsen), Mr. Olsen opined the Agreement did not reflect the agreement between the parties after objecting to the nature of the billing within the Agreement. *Id*.

27. After making only 1 payment under the Agreement, Loge failed to make any additional payments in in compliance with the Agreement's Payment Terms

28. This action was in contravention of Payment Terms of the Agreement, which explicitly stipulates that Loge shall make a series of 6 payments from October 31, 2022 to June 1, 2023.

29. Since January 30, 2023, Loge has not made any payments under the Payment Terms.

30. Loge made three (3) consecutive late payments and is more than 90 (ninety) days late in making its payments.

31. Loge is no longer entitled to the discounted pricing provided in the Agreement.

32. Top Media has made multiple efforts to engage in communication with Loge in an attempt to mediate the situations.

33. However, Loge has failed to comply with its contractual obligations under the Agreement.

34. Loge's actions have caused Top Media damages in excess of $75,000.00 which damages continue to increase.

35. Top Media continues to suffer financial damage because of Loge's actions.

**FIRST CAUSE OF ACTION**

**(Breach of Contract)**

36. Top Media repeats and re-alleges each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

37. The Agreement is a legally enforceable and binding contract entered into by Loge and Top Media.

38. Pursuant to Statement of Work of the Agreement, Loge agreed to pay Top Media for work it performed related to PR services.

39. Top Media fully performed its obligations under the Agreement until February 7, 2023 when Loge terminated the Agreement.

40. Prior to February 7, 2023, Loge had not disputed Top Media's performance under the Agreement.

41. Prior to February 7, 2023, Loge had not terminated the Agreement.

42. Loge failed to timely make its initial payment on October 31, 2022 pursuant to the Payment Terms within the Agreement.

43. Loge failed to timely make its second payment on December 1, 2022 pursuant to the Payment Terms within the Agreement.

44. Loge failed to timely make its third payment on January 1, 2022 pursuant to the Payment Terms within the Agreement.

45. Loge failed to make payments 2 through 6 pursuant to the Payment Terms within the Agreement.

46. Loge stopped making payments after making only one (1) payment of $61,000 to Top Media in violation of the Payment Terms within the Agreement.

47. Loge knew Top Media made significant and substantial investments at the onset of the Agreement so that it could fulfill its obligations under the Agreement.

48. Despite this knowledge, Loge largely failed to pay Top Media for its work under the Agreement.

49. Loge breached the Agreement by failing to comply with the Payment Terms within the Agreement.

50. Loge breached the Agreement by failing to pay Top Media for the work it performed under the Agreement.

51. As a result of Loge's breach, Top Media has been damaged in excess of $75,000.00.

52. Top Media continues to be damaged by Loge's actions.

53. Top Media has been required to hire an attorney to prosecute this action and, therefore, seeks recovery of its attorneys' fees and costs.

## SECOND CAUSE OF ACTION

### (Breach of the Covenant of Good Faith and Fair Dealing)

50. Top Media repeats and re-alleges each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

51. The Agreement is a legally enforceable and binding contract entered into by Top Media and Loge.

52. A covenant of good faith and fair dealing is implied in every contract in Nevada, including the parties' Agreement.

53. Loge knew Top Media made significant and substantial investments at the onset of the Agreement so that it could fulfill its obligations under the Agreement (including developing an editorial calendar for the entire contract period, writing PR pitches, assembling lists of media contacts, doing analysis of coverage in each market, recruiting and hiring additional workers to perform work specifically for this Agreement, and implementing new software and project management systems).

54. Loge knew an early termination of the Agreement would cause an undue financial burden on Top Media due to its significant and substantial investment at the onset of the Agreement.

55. Loge promised to make timely payments pursuant to the Payment Terms within the Agreement.

56. Top Media made a significant and substantial investment towards its obligations under the Agreement once the Agreement was signed by both parties (including developing an editorial calendar for the entire contract period, writing PR pitches, assembling lists of media contacts, doing analysis of coverage in each market, recruiting and hiring additional workers to perform work specifically for this Agreement, and implementing new software and project management systems).

57. Despite Loge's promises and understanding that an early termination of the Agreement would cause an undue financial burden on Top Media, Loge submitted an email on February 7, 2023 terminating the Agreement early.

58. Loge refuses to compensate Top Media for its significant and substantial investment towards its obligations under the Agreement (including developing an editorial calendar for the entire contract period, writing PR pitches, assembling lists of media contacts, doing analysis of coverage in each market, recruiting and hiring additional workers to perform work specifically for this Agreement, and implementing new software and project management systems.)

59. Loge made promises via email communication to Top Media between November 21, 2022 through January 29, 2022 to make the payments due under the Agreement.

60. Top Media continued to perform its obligations due under the Agreement because of Loge's ongoing reassurances of payment between November 21, 2022 through January 29, 2022.

61. Shortly after making its initial payment due under the Agreement, Loge submitted an email entitled "Termination of [A]greement" on February 7, 2023.

62. Loge never complained about Top Media's performance under the Agreement before February 7, 2023 as its employees had previously thanked Top Media for its work under the Agreement.

63. Loge's promises between November 21, 2022 through January 29, 2022 induced Top Media to continue performing under the Agreement despite Loge's failure to comply with its obligations under the Agreement.

64. Loge refused to fulfill its obligations under the Agreement and attempted to re-negotiate the payment terms after the Agreement was executed by the parties and Top Media had performed its obligations under the Agreement.

65. Loge's attempts to re-negotiate the Agreement are in contravention of Paragraph 6(a) of the Agreement.

66. Loge breached the Agreement by failing to make payments pursuant to the Payment Terms of the Agreement.

67. As a result of Loge's breach, Top Media has been damaged in excess of $75,000.00.

68. Top Media has been required to hire an attorney to prosecute this action and, therefore, seeks recovery of its attorneys' fees and costs.

### THIRD CAUSE OF ACTION

### (Fraud)

69. Top Media repeats and re-alleges each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

70. The Agreement is a legally enforceable and binding contract entered into by Top Media and Loge.

71. Loge promised to make timely payments pursuant to the Payment Terms within the Agreement.

72. Loge failed to timely make its initial payment pursuant to the Payment Terms within the Agreement.

73. Loge failed to make its second through sixth payment pursuant to the Payment Terms within the Agreement.

74. On November 21, 2022, Loge CEO Cale Genebacher ("Genebacher") emailed Top Media to request that the initial Top Media invoice be modified so that Loge could account for "different pots of money for different things."

75. On November 30, 2022, Loge's EVP of Marketing Slate Olson ("Olson") emailed Top Media to introduce it to "Sarah in finance" to confirm Top Media will receive payment twice a month.

76. On December 1, 2022, Loge's finance employee Sarah Johnson ("Johnson"), sent an email to Top Media indicating that she is double checking Loge's records to ensure she has everything to issue payment to Top Media.

77. On December 5, 2022, Genebacher emailed Top Media to confirm that Loge typically processes and pays invoices twice a month for payment on the 15th and 30th. He also indicated he asked Johnson to confirm Top Media's invoices were uploaded on Loge's third party AP processing system "bill.com" to connect Top Media for direct ACH payment so that Loge could pay Top Media's invoices.

78. On December 5, 2022, Genebacher emailed Top Media to admit that it was his fault that Loge had not issued payment to Top Media yet and that Loge would get Top Media's outstanding invoice processed.

79. On December 5, 2022, Johnson emailed Top Media to confirm that she received Top Media's W-9 and that the ACH details for payment to Top Media were set up on bill.com.

80. On December 27, 2022, Johnson emailed Top Media to indicate she is waiting for an update/approval from Loge's EVP of finance to issue Loge's first payment to Top Media.

81. On January 30, 2023, Johson sends an email to Top Media to confirm Loge issued its first payment to Top Media via wire transfer.

82. The emails from Loge to Top Media between November 21, 2022 through January 30, 2023 made representations that Loge planned to fulfill the entirety of it payment obligations under the Agreement.

83. Shortly after making its initial payment due under the Agreement, Loge submitted an email entitled "Termination of [A]greement" on February 7, 2023.

84. Loge never complained about Top Media's performance under the Agreement before February 7, 2023 as its employees had previously thanked Top Media for its work under the Agreement.

85. Top Media relied upon the emails submitted between November 21, 2022 through January 30, 2023 from Genebacher, Olson and Johnson confirming that Loge would issue payments to Top Media pursuant to the Payment Terms in the Agreement.

86. Top Media had no reason to know that Loge planned to terminate the Agreement on February 7, 2023 since Loge had never complained about Top Media's performance under the Agreement before February 7, 2023.

87. Loge did not fulfill its second through sixth payment obligations under the Agreement.

88. Loge had no intention of fulfilling its payment obligations under the Agreement.

89. Loge made representations to Top Media between November 21, 2022 through January 30, 2023 that it planned to fulfill its payment obligations under the Agreement.

90. Top Media continued to perform its work due under the Agreement despite Loge's failure to comply with the Payment Terms within the Agreement due to Loge's ongoing reassurances of payment between November 21, 2022 through January 30, 2022.

91. Loge wanted Top Media to continue fulfilling its obligations under the Agreement between November 21, 2022 through January 30, 2023 so that it would continue to receive benefits from Top Media's work from the Agreement.

92. As a result of Loge's actions, Top Media has been damaged in excess of $75,000.00 as it continued to fulfill its obligations under the Agreement between November 21, 2022 through January 30, 2023 despite never receiving payment from Loge.

93. Top Media has been required to hire an attorney to prosecute this action and, therefore, seeks recovery of its attorneys' fees and costs.

## FOURTH CAUSE OF ACTION

**(Unjust Enrichment—In The Alternative)**

94. Top Media repeats and re-alleges each and every allegation contained in the preceding paragraphs of this complaint as though fully set forth herein.

95. Alternatively, Top Media conferred a substantial benefit upon Loge by providing Loge with online marketing services, rapid response PR services and property specific launch PR services.

96. Given the nature of this benefit, it would be inequitable to allow Loge to accept and retain this benefit without repayment to Top Media for the full value thereof.

97. Loge accepted and retained this benefit.

98. Loge knew, or should have known, that Top Media expected to paid for the value of the services it provided to Loge.

99. Top Media has made multiple efforts to engage in communication with Loge in an attempt to mediate the situation.

100. However, Loge has consistently refused to honor its contractual obligations.

101. Loge's actions have caused Top Media damages in excess of $75,000.00 which damages continue to increase.

1  102. Top Media continues to suffer financial damage because of Loge's actions.

WHEREFORE, Top Media prays for the following relief:

1. Judgment in an amount to be determined at trial, but in excess of $75,000.00;

2. Pre and post judgment interest;

3. Attorneys' fees and costs of suit; and

4. Any further relief the Court may deem just and proper.

Dated this 3rd day of January, 2025.

WRIGHT FINLAY & ZAK

*/s/ Stephanie A. Garabedian*
Robin P. Wright, Esq.
Nevada Bar No. 9296
Stephanie A. Garabedian, Esq.
Nevada Bar No. 9612
8337 W. Sunset Rd, Suite 220
Las Vegas, NV 89113
*Attorneys for Plaintiff, TOP Media, LLC*

| **Index of Exhibits** | |
|---|---|
| **Exhibit 1** | Agency Services Agreement |
| **Exhibit 2** | Termination of Agreement email |